NOTICE

Decision filed 07/29/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240689-U

NO. 5-24-0689

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 22-CF-798 |
| | ) | |
| MARKEL SANDERS, | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE McHANEY delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in dismissing the defendant's amended motion to withdraw guilty plea; since any argument to the contrary would lack merit, the defendant's appointed appellate counsel is granted leave to withdraw, and the judgment of the trial court is affirmed.

¶ 2    The defendant, Markel Sanders, appeals from the trial court's order denying his amended motion to withdraw his guilty plea. His appointed counsel on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit. Accordingly, OSAD has filed a motion to withdraw as appellate counsel, along with a supporting memorandum. See *Anders v. California*, 386 U.S. 738 (1967); *People v. Jones*, 38 Ill. 2d 384 (1967). In response, the defendant has filed a "motion to strike" OSAD's *Anders* motion. This court has considered OSAD's motion and supporting memorandum, the defendant's "motion to strike," and the entire

1

record on appeal, and agrees with OSAD that there is no meritorious issue for appeal. Accordingly, OSAD's motion is granted, and the judgment of the trial court of Champaign County is affirmed.

¶ 3                                                    I. BACKGROUND

¶ 4      The defendant was charged with four counts: (1) attempt (first degree murder) (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2020)), a Class X felony with a mandatory 25-year firearm enhancement (*id.* § 8-4(c)(1)(D)); (2) aggravated battery with a firearm (*id.* § 12-3.05(e)(1)), a Class X felony (*id.* § 12-3.05(h)); (3) aggravated discharge of a firearm (*id.* § 24-1.2(a)(1)), a Class 1 felony (*id.* § 24-1.2(b)); and (4) unlawful possession of weapon by a felon (*id.* § 24-1.1), a Class 2 felony as charged (*id.* § 24-1.1(e)). Counsel was appointed for the defendant.

¶ 5                              A. Plea of Guilty and Sentencing

¶ 6      On November 14, 2023, the defendant appeared before the trial court for a plea hearing, at which time the court admonished the defendant regarding the following rights: (1) he could persist in his plea of not guilty and have a trial; (2) at that trial, the defendant could listen to the State's witnesses and cross-examine them through defense counsel; (3) he had the right to subpoena and present witnesses and evidence of his own; (4) he also had the right to testify and the right not to testify if he so chose; (5) if he pleaded guilty, the defendant would be "giving up" his right to a trial and his rights at trial; (6) a trial would be either before a jury or before a judge alone, as the defendant chose; and (7) at either type of trial, the State would have the burden of proving him guilty beyond a reasonable doubt. The defendant was further admonished that he had a right to appeal, including the necessity of filing a motion to withdraw guilty plea.

¶ 7      The State next announced the terms of the proposed plea agreement. The defendant would plead guilty to count 1, attempt (first degree murder), as amended so as to eliminate the firearm enhancement, and the State would agree to "cap" its sentencing recommendation at 25 years of

2

imprisonment and dismiss counts 2, 3, and 4. Plea counsel agreed that the terms were accurately stated, and the defendant confirmed his understanding of the terms. The court concurred in the plea.

¶ 8 The court then admonished the defendant regarding the nature of the charges and the possible penalties, and the defendant said he understood. The defendant confirmed that he understood the difference between a jury trial and a bench trial, and that he understood all the rights that the court had explained and had no questions. When asked whether his plea was "voluntary" or of his own "free will," the defendant said, "yes." When asked whether anybody had "forced, threatened or pressured" him into pleading guilty, the defendant said, "no." When asked if "anybody made any other promises" to "get [the defendant] to plead guilty," the defendant answered, "no."

¶ 9 The State's recitation a factual basis included that ballistics evidence, fingerprint evidence, and other circumstantial evidence connected the defendant to the shooting, and attempted murder, of a Champaign woman in August 2021; she was seriously wounded from being shot repeatedly through the front door of her house. Plea counsel stipulated to the factual basis. The defendant pleaded guilty to attempt (first degree murder) and signed a written jury waiver. Finding that the plea was knowingly and voluntarily made, and that there was a factual basis, the court accepted the guilty plea, order a presentence investigation report (PSI), and scheduled a sentencing hearing.

¶ 10 The PSI revealed that the defendant was 21 years old at the time of the crime. He had adult felony convictions in 2019 and 2022 for unlawful possession of a weapon by a felon and was sentenced to the Illinois Department of Corrections both times. In addition, he had juvenile delinquency adjudications for aggravated unlawful use of a weapon, residential burglary, aggravated battery causing great bodily harm, residential burglary, and aggravated battery.

3

¶ 11   At the sentencing hearing, one of the State's witnesses, Champaign police detective, testified about gang activity in Champaign, including the shooting of the victim in this case, and how forensic evidence had connected the defendant—an "associate" of a gang, though not a "known member"—to a pistol fired outside the victim's house. The defendant made a statement in allocution. He took responsibility for "[his] role *** in the chaos" that resulted in the victim's shooting, and in her suffering. "[T]here is nothing I could do that could or would repair the damage I've done," he said, describing himself as "deeply remorseful." The defendant also described his participation in a program at the Danville Correctional Center, in which he was working on his "problems," which he described as "violence and trauma." The State asked for a sentence of 25 years in prison. Defense counsel asked for a 10-year sentence.

¶ 12   The trial court found the following aggravating factors: the defendant's criminal and juvenile history, which showed that he was a violent person; his association with gang members; the fact that the shooting was gang-related; and the need for deterrence. The court found mitigating that the defendant took responsibility for his actions and showed remorse; he experienced depression and post-traumatic stress disorder; he started to address his mental-health problems; and he earned a high-school diploma. The trial court imposed a sentence of 22 years in prison, followed by 3 years of mandatory supervised release.

¶ 13                    B. Motion to Withdraw Guilty Plea

¶ 14   The defendant filed a *pro se* "MOTION TO WITHDRAW GUILTY PLEA AND VACATE SENTENCE." He alleged that plea counsel had "lied" to him "on the particular of the range of the sentence and the specific nature of the plea as well as the potential consequences of the plea agreement." At the defendant's request, the court appointed new postplea counsel who, on March 13, 2024, filed an amended motion to withdraw guilty plea and vacate sentence. In the

4

amended motion, the defendant alleged that his plea was not knowing and voluntary due to two misrepresentations by plea counsel. First, plea counsel told him, on multiple occasions, "that a key witness in his case, [J.W.], would testify that [the defendant] was involved in the shooting that was the subject of the Attempt First Degree Murder charge." However, sometime after his guilty plea, he "reviewed the discovery *** and learned that it contained no statements of [J.W.]" Second, plea counsel had "assured" him that despite the State's agreement to cap its sentencing recommendation at 25 years, the trial court "would not sentence him to more than 13 years [in prison]." The defendant alleged that he would not have pled guilty but for these two misrepresentations by plea counsel. The defendant's supporting affidavit was attached to his amended motion to withdraw guilty plea.

¶ 15    On March 13, 2024, postplea counsel filed a certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. Dec. 7, 2023). Postplea counsel certified that (1) he had "consulted with the [d]efendant by phone to ascertain the defendant's contentions of error in the entry of the plea of guilty and in the sentence"; (2) he had "examined the trial court file and report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing"; and (3) he had "made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings."

¶ 16    On May 29, 2024, the trial court held a hearing on the defendant's amended motion to withdraw guilty plea. Two witnesses were called—the defendant, who testified on his own behalf, and plea counsel, who testified for the State.

¶ 17    The defendant testified that prior to his guilty plea, he spoke with plea counsel "multiple" times over the phone at the Danville Correctional Center, where he was incarcerated, and every time he spoke with her, she told him that the judge would not impose a sentence greater than "12

5

to 13 years." The defendant said plea counsel "didn't ever use any words promised [*sic*]" but instead had merely stated that he "was not gonna get any more than 12 to 13 years." Had it not been for plea counsel's assurances about a 12- to 13-year prison sentence, the defendant would not have pled guilty.

¶ 18    The defendant said that plea counsel told him that a witness named J.W. had recorded a statement but he never received a copy of it. After pleading guilty, the defendant reviewed his discovery which did not include any statement from J.W. The defendant stated that if he had known there was no statement from J.W., he would not have pled guilty.

¶ 19    On cross-examination, the defendant testified that plea counsel told him that J.W.'s recorded statement would be adverse to him. The defendant also said that he had been provided with a portion of his discovery materials, but he never reviewed them before pleading guilty. Instead, he gave the discovery to J.M., a fellow Danville Correctional Center inmate, to review.

¶ 20    Plea counsel testified that when the parties were negotiating, the defendant ultimately accepted a plea which included the State's agreement to cap its sentencing recommendation at 25 years. Plea counsel planned to ask for a sentence substantially below the cap, due to an abundance of mitigation evidence, and "[her] hope" was that the defendant would be sentenced to "around 12 or 13 years" in prison. Plea counsel testified that she made clear to the defendant that he could be sentenced up to 25 years and that she would never "guarantee a sentence" because "it would be malpractice to do so."

¶ 21    Regarding the recorded statement by J.W., plea counsel testified that when she began work on the defendant's case in January 2023, she met with a Champaign police detective, who was also a deputy U.S. Marshal, at the offices of the Champaign County State's Attorney. The detective had intended to play for her a CD of an interview with J.W. "that was part of a proffer agreement

that [J.W.] had made with the federal prosecutor." The detective explained that the federal prosecutor had filed a petition to revoke J.W.'s supervised release, plus he had filed a new felon-in-possession charge, and that J.W. had made the proffer to hopefully reduce his federal sentence. Technical difficulties precluded playing the CD for plea counsel. Instead, the detective verbally recounted what J.W. had said in the recorded statement. Plea counsel testified that according to the detective, J.W. said that the defendant was present at the scene of the attempted murder and that the defendant had fired a gun. Plea counsel considered J.W.'s statement to be "potentially very detrimental" to the defendant.

¶ 22    Plea counsel further testified that she informed the defendant of J.W.'s adverse statement. Based upon her experience as a federal defender, plea counsel knew that J.W. "would definitely have to testify" at the defendant's trial in order to get any federal sentencing benefit. Plea counsel repeatedly asked the state's attorney for any written report concerning J.W.'s recorded statement and eventually determined that no written report had been created. The State did not have a copy of the CD of J.W.'s statement in its case file. Plea counsel did not consider J.W.'s adverse statement to be the crucial piece of evidence against the defendant and did not consider the statement as the key to her advising the defendant. "There were other factors as well," for example, there were "some forensic challenges" that militated in favor of accepting the plea offer, plus "other circumstantial pieces of evidence," and a statement from a Danville Correctional Center informant, J.M., formerly incarcerated with the defendant, who stated that the defendant had made "certain admissions that would be very damaging to [the defendant's case]." On at least three occasions that plea counsel could recall, she visited the defendant at the Danville Correctional Center, and they "looked over the discovery together" and "talked through those reports." On

cross-examination by postplea counsel, plea counsel testified that she had told the defendant that she did not have a either a written or video statement from J.W.

¶ 23　The trial court found that plea counsel was "infinitely credible." The trial court did not find that the defendant had outright lied but did find that he had some beliefs "that certain things existed or happened" that were "not really based on reason." The court discounted the defendant's explanation that, at his plea hearing, the defendant failed to tell the court that there were "promises" made to him because plea counsel did not use that exact word when guaranteeing he would receive a prison sentence of 12 to 13 years. Regarding the recorded statement of J.W., the court stated that plea counsel "did tell" the defendant about that statement., as the defendant admitted, and that during the plea hearing, "there was no mention of [J.W.] at all" in the factual basis. "And, in fact," the court continued, "[plea counsel] even said that there was additional evidence against the Defendant, including scientific evidence that would have to be countered." The defendant's amended motion to withdraw guilty plea was denied, and the trial clerk filed a timely notice of appeal on the defendant's behalf.

¶ 24　　　　　　　　　　　II. ANALYSIS

¶ 25　In its supporting memorandum, OSAD identified four potential issues for appeal, which we examine in the order presented.

¶ 26　　A. Whether Any Errors Were Committed During Rule 402 Admonishments

¶ 27　Due process requires that a plea of guilty, in order to be valid, must be made intelligently and voluntarily, and that the record affirmatively discloses the intelligent and voluntary nature of the plea. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *People v. Burt*, 168 Ill. 2d 49, 64 (1995). In order to ensure that only valid guilty pleas are accepted, and that the record establishes the plea's validity, Illinois Supreme Court Rule 402 (eff. July 1, 2012) was adopted. Rule 402(a) states that

8

a trial court "shall not accept" a defendant's guilty plea without first informing the defendant, and determining that he understands, (1) the nature of the charge, (2) the possible penalties, (3) his right to plead guilty or to persist in pleading not guilty, and (4) that a plea of guilty would result in waiver of his right to a trial and his right to confront witnesses. Ill. S. Ct. R. 402(a) (eff. July 1, 2012). The purpose of Rule 402(a) admonishments is to ensure that a defendant understands his guilty plea, the consequences of pleading guilty, and the rights that he waives by pleading guilty. *People v. Williams*, 2012 IL App (2d) 110559, ¶ 13. *People v. Wills*, 61 Ill. 2d 105, 111 (1975). Substantial compliance with the provisions of Rule 402 "is sufficient to satisfy due process." *Burt*, 168 Ill. 2d at 64; see also *People v. Dougherty*, 394 Ill. App. 3d 134, 138 (2009) (Rule 402 requires substantial, not strict or literal, compliance with its provisions). A trial court's compliance with Rule 402 is reviewed *de novo*. *People v. Chapman*, 379 Ill. App. 3d 317, 326 (2007).

¶ 28     As detailed *supra*, the trial court carefully admonished the defendant regarding the nature of the charge, the possible penalties, his right to plead not guilty, and that a plea of guilty would waive his right to trial and his trial rights. The trial court's admonishments were more comprehensive than Rule 402 requires. Therefore, we find that the trial court did not commit any error in admonishing the defendant pursuant to Rule 402(a).

¶ 29     Rule 402(b) provides that the trial court "shall not accept" a guilty plea without first determining that the plea is voluntary. Ill. S. Ct. R. 402(b) (eff. July 1, 2012). If the plea is the result of an agreement, the agreement shall be stated in open court, and the court, by questioning the defendant personally, shall confirm the terms of that agreement. *Id.* By questioning the defendant personally, the court "shall determine whether any force or threats or any promises, apart from the plea agreement, were used to obtain the plea." *Id.*

¶ 30    Here, the terms of the plea agreement were recited in open court. The defendant confirmed that those terms were correct. The defendant confirmed his plea was voluntary, and that no force, threats, or pressure had been applied to persuade him to plead guilty, and that no promises had been made to him other than the terms of the plea agreement. We find that the trial court complied with Rule 402(b).

¶ 31    B. Whether the Defendant's Guilty Plea Was Knowingly and Voluntarily Made

¶ 32    "Leave to withdraw a plea of guilty is not granted as a matter of right, but as required to correct a manifest injustice under the facts involved." *People v. Hillenbrand*, 121 Ill. 2d 537, 545 (1988). Leave should be granted if, for example, the guilty plea was entered on a misapprehension of the facts or the law. *People v. Davis*, 145 Ill. 2d 240, 244 (1991). The defendant "bears the burden of demonstrating *** the necessity of withdrawing his plea." *People v. Artale*, 244 Ill. App. 3d 469, 475 (1993). It is "within the sound discretion" of the trial court to determine whether a guilty plea may be withdrawn. *Davis*, 145 Ill. 2d at 244. At a hearing on a motion to withdraw guilty plea, the trial court "bears the burden of assessing the credibility of witnesses." *People v. Mercado*, 356 Ill. App. 3d 487, 497 (2005). On appeal, the denial of leave to withdraw a guilty plea is reviewed for an abuse of discretion, which will be found only if the ruling is arbitrary, fanciful, or unreasonable. *People v. Delvillar*, 235 Ill. 2d 507, 520 (2009).

¶ 33    At the May 29, 2024, hearing on the defendant's amended motion to withdraw his guilty plea, the trial court found plea counsel's testimony to be "infinitely credible" and the defendant's testimony to be far less credible, and even unreasonable. Plea counsel testified that she told the defendant it was her "hope"—not promise—that the defendant would be sentenced to 12 or 13 years in prison. See *People v. Corby*, 139 Ill. App. 3d 214, 219 (1985) (a plea based upon "a prediction rather than a promise[ ] would not be rendered involuntary when such prediction was

10

unfulfilled" (internal quotation marks omitted)). The defendant's argument that his plea was not knowingly made because he was never provided with J.W.'s recorded statement given to federal authorities is meritless for the reasons *supra*. There is nothing in the record to support the conclusion that the trial court's decision to deny the defendant's amended motion to withdraw his guilty plea was arbitrary, fanciful, or unreasonable.

¶ 34      C. Whether the Defendant Was Improperly Sentenced Based Upon
the Denial of His Motion to Withdraw Plea

¶ 35     The defendant entered a negotiated guilty plea to a Class X felony, attempt (first degree murder), which was punishable by a term of imprisonment for not less than 6 years and not more than 30 years. See 730 ILCS 5/5-4.5-25(a) (West 2020) (sentences for Class X felonies). "By agreeing to plead guilty in exchange for a recommended sentencing cap, a defendant is, in effect, agreeing not to challenge any sentence imposed below that cap on the grounds that it is excessive." See *People v. Linder*, 186 Ill. 2d 67, 74 (1999).

¶ 36     The defendant's sentence was within the statutory range (see 730 ILCS 5/5-4.5-25(a) (West 2020) (sentence for Class X felonies)) and within the agreed-upon 25-year cap. Because the defendant's plea was negotiated, he "cannot raise a challenge to his sentence on appeal."

¶ 37      D. Whether Postplea Counsel Complied With Rule 604(d)

¶ 38     Illinois Supreme Court Rule 604(d) (eff. Dec. 7, 2023) requires counsel representing a defendant on a motion to withdraw a guilty plea to certify the following:

"[T]he attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made

11

any amendments to the motion necessary for adequate presentation of any defects in those proceedings."

"[C]ounsel must strictly comply with 'each of the provisions of Rule 604(d).' " *People v. Gorss*, 2022 IL 126464, ¶ 19 (quoting *People v. Janes*, 158 Ill. 2d 27, 33 (1994)). Generally, a reviewing court will consider the certificate itself when evaluating compliance with Rule 604(d). *People v. Curtis*, 2021 IL App (4th) 190658, ¶ 37. However, even if counsel files a facially valid Rule 604(d) certificate, this court may review the record to determine whether counsel actually fulfilled the obligations outlined in the rule. *People v. Bridges*, 2017 IL App (2d) 150718, ¶ 8. Whether counsel strictly complied with the provisions of Rule 604(d) is reviewed *de novo*. *Gorss*, 2022 IL 126464, ¶ 10.

¶ 39    Here, postplea counsel filed his Rule 604(d) certificate several weeks before the hearing on the amended motion to withdraw guilty plea. Described *supra*, the certificate mirrors the requirements of Rule 604(d). Counsel strictly complied with the certification requirement, thus establishing counsel's fulfillment of the duties owed to the defendant. See, *e.g.*, *People v. Wyatt*, 305 Ill. App. 3d 291, 297 (1999) (the certificate must give some indication that counsel performed the duties required under Rule 604(d)). There is nothing in the record to refute postplea counsel's 604(d) certificate of compliance.

¶ 40                                III. CONCLUSION

¶ 41    After reviewing the entire record, we find that the four potential appealable issues raised by OSAD in its supporting memorandum are meritless. Accordingly, OSAD's motion for leave to withdraw is granted, and the judgment of the trial court is affirmed.


¶ 42    Motion granted; judgment affirmed.